Michael D. Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EDWARD TOCKTOO,<br><br>          Petitioner,<br><br>vs.<br><br>CRAIG TURNBULL,<br><br>          Respondent. | Case No. 3:04-cv-0117-RRB<br><br>PETITIONER'S REPORT AND BRIEF IN SUPPORT OF POST-CONVICTION RELIEF |

Petitioner, Edward Tocktoo, by and through counsel Michael D. Dieni, Assistant Federal Defender, pursuant to this court's August 23, 2006, order, submits a status report regarding pending state court proceedings and the factual basis for his application for habeas corpus relief.

   1.   *Procedural history*

On June 16, 1998, Mr. Tocktoo, a resident of a tiny northwest Alaskan Native Village, with only a high school degree, represented himself at a jury trial. He was convicted by the jury in Nome, Alaska, Case No. 2NO-98-038 CR. On August 14,

1998, the court sentenced Mr. Tocktoo to a total of 23 years to serve, plus five years suspended and ten years probation.

An appeal followed, in which counsel for Mr. Tocktoo raised speedy trial and sentencing issues. The Alaska Court of Appeals affirmed the judgment. (M.O. & J., Alaska Court of Appeals, No. 4234, June 21, 2000)

On May 23, 2000, Mr. Tocktoo filed his first petition for post-conviction relief in the State of Alaska, asserting a variety of issues, including a challenge to the waiver of his right to counsel at his trial. 3NO-00-88CI. The court appointed Gayle Brown to represent Mr. Tocktoo, and she briefed only one issue, the issue related to the waiver of counsel. The trial court rejected the petition.

Mr. Tocktoo then appealed to the Alaska Court of Appeals, arguing that Mr. Tocktoo had not effectively waived his right to counsel. The appeal was denied by the Alaska Court of Appeals. (M.O. & J., Alaska Court of Appeals, No. 4765, September 24, 2003)

Counsel for Mr. Tocktoo then filed a petition for hearing to the Alaska Supreme Court, raising the same issue. The petition for hearing argued essentially that the Alaska Court of Appeals overlooked the fact that, by its own recitation of the facts, Mr. Tocktoo had made a rather explicit withdrawal of his waiver of counsel, and that the waiver was therefore, at best, equivocal. The Alaska Supreme Court denied the petition for hearing by order on February 6, 2004.

On or about July 6, 2004, Mr. Tocktoo filed this timely petition for habeas corpus relief in federal court, asserting a variety of grounds.

On February 7, 2005, Mr. Tocktoo filed a second petition for post-conviction relief in State court. Mr. Tocktoo claimed that his first post-conviction relief attorney, Gayle Brown, had been ineffective counsel for having failed to raise any issues other than the attorney waiver issue.

Concurrent with the filing of the second petition for post conviction relief in state court, Mr. Tocktoo filed a motion for stay from this court. The State of Alaska opposed. To date, the motion has not been ruled upon.

On August 23, 2006, this court convened a status hearing in this case and ordered Mr. Tocktoo to file this report detailing the status of the second petition in state court and to file a statement of facts pertaining to the present petition.

Since then, on August 25, 2006, Mr. Tocktoo's new state court attorney, Judy Berman, filed an amended (second) petition for post-conviction relief. Instead of raising any new issues, however, Ms. Berman has filed what is, in essence, a motion for reconsideration of the attorney waiver issue. Ms. Berman has asserted that Gayle Brown was ineffective for having done a very poor job briefing the attorney waiver issue, and Ms. Berman has asked the trial court to reconsider the attorney waiver issue. She has not raised any additional issues. The same issue already pending in this petition in federal court has simply been re-briefed in state court.

Although it would make sense to allow the State court to reconsider the issue before deciding the matter in federal court, there is no legal requirement to do so. Mr. Tocktoo's Sixth Amendment claims in the present petition may now be considered by this court.

      2.    *Summary of argument for habeas corpus relief and new trial*

The State of Alaska is holding Mr. Tocktoo in custody as a result of a trial in which Mr. Tocktoo was denied his Sixth Amendment right to counsel. In proceedings below, the State of Alaska successfully argued that Mr. Tocktoo waived his right to counsel. Mr. Tocktoo now asks this court to review the record and reverse that decision. Upon doing so, this court should find that although Mr. Tocktoo initially verbalized a desire to give up his right to counsel, he did not unequivocally, knowingly, intelligently and voluntarily waive his right to counsel.

In particular, the record below shows that Mr. Tocktoo equivocated in his decision to waive his right to counsel, and he did so because the trial court failed to advise Mr. Tocktoo of the "core functions" that a lawyer would and could perform for him in the process of doing a trial. Within a few days after the initial waiver hearing, but more than ten days before trial, Mr. Tocktoo began to discover how difficult it would be to represent himself. He wrote a letter to the court, in effect requesting reconsideration of his attorney waiver and equivocating as to his previous request to represent himself.

The trial court, however, was unreceptive. Though offering to provide Mr. Tocktoo some help with the logistics of self-representation, the court again failed to explain the basic features of a trial and what a lawyer could do for him in trial. Thus, it was not until the end of the trial that Mr. Tocktoo understood what a lawyer could have done for him at trial.

The trial, which ultimately resulted in a composite sentence of 23 years, took only two days.  During his testimony at trial, he admitted he did not know what he put himself into.  He was convicted of all counts.

The defendant's Sixth Amendment right to counsel is so central to Due Process, this court is obliged to "indulge in every reasonable presumption against waiver."  Upon doing so, it will be clear that Mr. Tocktoo never knowingly, intelligently and voluntarily waived his right to counsel.

### 3. Factual background

#### A. Initial proceedings

On January 23, 1998, the State of Alaska indicted Eddie Tocktoo for four counts of sexual abuse of a minor involving two girls, events alleged to have occurred in November and December 1997.  (Exhibit A)  Police arrested Mr. Tocktoo on January 24 and the court appointed Assistant Public Defender Kirsten Bey.  (Exhibits B, C)

Mr. Tocktoo lacked funds to post bail and was held in custody throughout the proceedings.

On March 16, 1998, the court set an April 11 deadline for motions and an April 21, 1998, trial date.  (Exhibit D)  On April 20, 1998, the day before trial was set to begin, Ms. Bey filed pretrial motions.  At the call of the calender, on April 20, 1998, Ms. Bey announced that she had filed pretrial motions and the court reset the trial for May 19, 1998.  (Exhibit E)

### B.     *Attorney waiver proceedings*

On May 14, 1998, the issue of representation first surfaced. At the hearing, the court considered and denied Mr. Tocktoo's request for a different lawyer. (Exhibit F) On May 29, 1998, the court reconsidered the motion and granted Mr. Tocktoo's request for new counsel. (Exhibit G) Trial was reset for June 15. *Id.* The court appointed Office of Public Advocacy conflict counsel Bob Lewis.

On or about June 4, 1998, Mr. Lewis met with Mr. Tocktoo for the first and only time. (Exhibit H) Mr. Lewis explained that due to prior commitments he could not be available to represent Mr. Tocktoo on June 15 and that the trial would have to be delayed. Mr. Tocktoo objected to any further delays of his trial. Mr. Lewis responded by filing a motion to withdraw as counsel. *Id.*

On the same date, June 4, 1998, the court convened a hearing to consider Mr. Lewis's motion to withdraw.[1] (Exhibit I) During this hearing, Mr. Lewis, in effect, invited the court to consider letting Mr. Tocktoo represent himself. Mr. Lewis stated that he had advised Mr. Tocktoo that self-representation was "his only true alternative if he really wants to have a trial on June the 15." (*Id.* at p. 350.) At the representation hearing, Mr. Tocktoo confirmed that his only reason for wanting to represent himself at trial was so that the trial would proceed on June 15. The following is part of the exchange that took place between Mr. Tocktoo and the court:

---

[1] Although the transcript states that this hearing took place on June 4, pleadings filed by Mr. Lewis indicate that it was held on June 5.

>    THE COURT: Am I correct then, the only reason you want to represent yourself is so this matter will be tried on the 15th of June?
>
>    MR. TOCKTOO: That's it, Your honor.

(*Id.* at p. 351)

Nothing in Mr. Tocktoo's background prepared him to conduct a jury trial. He explained to the court that he had completed high school in the tiny Village of Brevig Mission. He had taken a few college training courses in Nome related to mining. He had followed up with seafood processor training. At the time of his arrest, he had been involved in plumbing training. Mr. Tocktoo had no training in the law. (Exhibit I at p. 356-57)

The court proceeded to conduct a hearing to determine whether Mr. Tocktoo could represent himself. During the course of this hearing, the court failed to establish that Mr. Tocktoo understood what a lawyer could do for him at trial. When asked, Mr. Tocktoo divulged that he had never seen a trial, other than watching television. (*Id.* at p. 362) The court correctly advised Mr. Tocktoo that real trials are quite different than television, but the court stopped short of telling Mr. Tocktoo what happens at a real trial. *Id.* The trial court inquired as to whether Mr. Tocktoo had read anything or knew about the rules of evidence and court, and Mr. Tocktoo, in general, said he had. (*Id.* at pp. 362-63) When asked, however, Mr. Tocktoo struggled to explain what the word "subpoena" meant. (*Id.* at p. 364) He also advised, when asked, that he did not even know who went first in a trial. (*Id.* at p. 363) The exchange here

7

between Mr. Tocktoo and the court revealed Mr. Tocktoo's failure to understand the essential features of a trial:

> Court: Do you know who goes first at trial?
>
> Mr. Tocktoo: (indiscernible)
>
> Court: I'm sorry?
>
> Mr. Tocktoo: No, your honor.
>
> Court: If you don't know who goes first, then how are you going to be able to do any good?
>
> Mr. Tocktoo: I guess I just got to see who goes on first, Your Honor, and . . . .
>
> Court: But, Mr. Tocktoo, understand – you say you've got to decide – see who goes first, but the point is if you don't know, how can you conduct a trial? If you don't know what happens first, happens second, happens third, you've never been in a trial, you've never seen a trial.
>
> Mr. Tocktoo: I don't know what to say right there, Your honor.

*Id.*

At this juncture in the colloquy, the court needed to do more than just establish Mr. Tocktoo's ignorance of the contents of a trial; the court needed to explain the basic functions of a trial and what a lawyer could do for Mr. Tocktoo. A review of the entire colloquy shows that at no point did Judge Esch actually ask Mr. Tocktoo whether he knew about voir dire, opening statement, cross-examining the state's witnesses, examining and preparing his own witnesses, jury instructions and closing argument. (Exhibit I) Instead, Judge Esch focused upon the seriousness of the charges and the idea that the state's attorney was better trained to do the job. The court did advise Mr.

Tocktoo that he proceeded at his own peril, explaining the elements of the offense, the potential penalties, and the fact that the prosecutor would have a huge advantage over someone like Mr. Tocktoo, who was untrained and inexperienced in the law. Nevertheless, as to the essential features of a trial, and the things a lawyer could do to represent him. The court left Mr. Tocktoo unaware of what was required to do a trial.

At the close of the inquiry, the court committed a second error. Though the trial was yet ten days away, the court erred by advising Mr. Tocktoo that his waiver was irrevocable:

> Court: And you need to understand that that is a possibility [that the trial may be continued, anyway, in response to a motion from the State], and if that does happen you're not going to then be able to say, oh, Your Honor, then I want a lawyer back, because your right to a lawyer, if you give it up today, is unconditional. You don't necessarily have a right then to get a new one, to have Mr. Lewis come back.

(Exhibit I at p. 378)

Nevertheless, on June 10, 1998, the court received a letter from Mr. Tocktoo, in which Mr. Tocktoo requested counsel. The letter stated, in part:

> Again, I ask you, Your Honor, and come before your court as an indigent person and ask this court again for guidance in my situation with counsel which, under Article I, Section 7(g), Right to Counsel, the way I read this section is, I am at the mercy of the court to assign me counsel regardless of indifferences [sic] with my prior counsels, Kirsten Bey and Robert Lewis.

(Exhibit J)

The court addressed the letter at calendar call on June 15, the day before trial. The court did not accept the request for counsel at face value. Instead, the court reminded Mr. Tocktoo that the matter had already been decided:    Mr. Tocktoo, what

9

is the status of your request with regard to a lawyer? I thought we'd gone through this. Have you changed your mind?

(Exhibit K at pp. 385-86)

Mr. Tocktoo replied, "Not really, Your Honor. Just kind of having a confusing time doing this on my own." (*Id.* at pp. 385-86)

The court then proceeded to address Mr. Tocktoo's request to have some "pro bonos" assist him during trial. After determining that these individuals were not in fact attorneys, the court denied the request. (*Id.*)

On the day of trial, Mr. Tocktoo made one last effort to get help with the trial. He requested that the court appoint co-counsel. The court summarily rejected that request. (Exhibit L at pp. 4-5)

The matter proceeded to trial the following day, with Mr. Tocktoo representing himself. Throughout the trial, Mr. Tocktoo demonstrated that he had no experience or understanding of how to conduct himself. For example, he had no real understanding of voir dire. The voir dire of the first juror went as follows:

> Court: Mr. Tocktoo, do you have any questions of Mr. Muktoyuk?
>
> Tocktoo: I can ask anything I want of just procedures on what's going on, or what?
>
> Court: You're entitled to ask questions which may allow you to make a decision about challenging her for cause, exercising peremptory challenges, or her fitness, in your opinion, to serve as a juror.
>
> Tocktoo: No. I have no questions, Your Honor.

(Exhibit L at p. 23)

As he correctly put it in his own testimony at the end of trial, he had not known what to expect:

> Tocktoo: Ever since I stepped into this court yesterday and choose up the jury I was nervous and I'm still nervous right now because I don't know what to expect – I didn't know what to expect – I didn't know what – what was going on
>
> . . . .
>
> And I tried – I tried – when I was up there, I tried looking into the lawbooks but I didn't have enough time. I came up with some few but couldn't be used here. So I don't know what I just put myself into. I don't know what the state – to tell you the truth I didn't know  – I don't know the procedure on this. I just did my – my best.

(Exhibit L at pp. 276-77)

On June 22, 1998, within six days of the date of the conviction, Mr. Tocktoo made a plea to the court, requesting a new trial with the assistance of counsel. (Exhibits M, N)  That motion was denied.

> 4.   *Argument – Mr. Tocktoo did not effectively waive his right to counsel*
>
>    A.   *Any waiver must be unequivocal, and knowing, intelligent and voluntary*

The Sixth Amendment to the United States Constitution, provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

While the defendant has a right to waive his right to counsel, such a waiver must be knowing, intelligent, voluntary and unequivocal. *Faretta v. California*, 422 U.S. 806, 835 (1975). Furthermore, "[C]ourts indulge in every reasonable presumption against waiver. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Brewer v. Williams*, 430 U.S. 387, 404 (1977) (citations omitted).

It is also critically important that a defendant's waiver of counsel be unequivocal. *United States v. Arlt*, 41 F.3d 516, 519-20 (9th Cir. 1994); *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987). The burden of proving an unequivocal waiver, in fact, rests with the government. *United States v. Mohawk*, 20 F.3d 1480, 1484 (9th Cir. 1994); *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir. 1999). The Ninth Circuit Court of Appeals has taken the requirement of lack of equivocation very seriously.

In *Adams v. Carroll*, 85 F.2d 1441 (9th Cir. 1989), the court noted that, "If [a defendant] equivocates, he is presumed to have requested the assistance of counsel." *Id.* at 1444. *See also Jackson v. Yist*, 921 F.2d 822, 888 (9th Cir. 1990). The court further noted that the requirement that a waiver of the right to counsel be unequivocal "was a prerequisite to self-representation in this circuit well before *Feretta*, and has remained so since." *Id.* at 1444 (citations omitted).

Even if a defendant makes a knowing and intelligent decision to waive counsel, that decision is not necessarily irrevocable. See also, *Menefield v. Borg*, 881

F2d 696, 701 (9th Cir. 1989) (absent extraordinary circumstances or bad faith, an accused is entitled to request counsel at the time of motion for new trial).

> B.  *Mr. Tocktoo was equivocal in his choice to represent himself*

Turning to the facts of this case, it is clear that Mr. Tocktoo did not unequivocally waive his constitutionally-guaranteed right to counsel. Mr. Tocktoo's letter to the court stating that he requested "guidance" from the court "in my situation with counsel . . . I am at the mercy of the court to assign me counsel," was quite obviously a plea for the assistance of an attorney, and a realization that he did not know what he was getting into when he had requested to represent himself. (Exhibit J) The court received this letter on June 10, five days after Mr. Tocktoo had appeared in court and waived his right to counsel; it is therefore likely that the letter was written and sent within two or three days of his initial waiver. The most reasonable interpretation of Mr. Tocktoo's conduct was that he was seeking to withdraw his waiver. At the very least, his conduct called into question his waiver of counsel and rendered it equivocal.

The court addressed Mr. Tocktoo's letter five days later at calendar call, on June 15, the day before trial. The court inquired of Mr. Tocktoo in a challenging way, "I thought we'd gone through this. Have you changed your mind?" (Exhibit K at pp. 385-86) Given the way the question was posed to him, Mr. Tocktoo could not have felt that he was actually free to retract his waiver of counsel and request that an attorney be appointed to represent him. This is especially true given the fact that the court previously had admonished him that if he gave up his right to an attorney, his waiver

could not be revoked and he would not be allowed to later request the appointment of counsel.

As set forth above, a defendant who "equivocates . . . is presumed to have requested the assistance fo counsel" and that "courts must indulge in every reasonable presumption against waiver of the right to counsel." *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989); *Brewer v. Williams*, 430 U.S. 387, 404 (1977). Given this presumption, the court was required to inquire of Mr. Tocktoo's state of mind in a manner which would allow him to feel free to reconsider his decision to proceed *pro se*.

Part of this inquiry should have been to clearly advise Mr. Tocktoo that he could change his mind about going to trial the next day and agree to a continuance for the approximately one month that his former counsel had requested, which would have enabled him to have the benefit of counsel at trial. Mr. Tocktoo's comment that he was "having a confusing time doing this on my own" should have alerted the court that the magnitude of his decision had begun to sink in within days after his request to waive counsel. Since he was realizing the enormity of the task of self-representation, he should have been reminded of his option to wait a few more weeks for trial so that he could have the benefit of counsel.

Most important, the court should have corrected the deficiencies of the initial waiver hearing by explaining to Mr. Tocktoo what a lawyer could do for him at trial.

    C. *Mr. Tocktoo's equivocation reactivated the court's obligation to conduct a complete advisement as to the dangers and disadvantages of self-representation*

One of the reasons Mr. Tocktoo chose to represent himself – and the apparent reason he wrote a letter to the court seeking "guidance" as to the attorney issue – was that he did not understand what he was getting into.

A waiver of counsel will be considered knowing and intelligent only if the defendant is made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3)the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Balough*, 820 F.2d at 1487 (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525); *United States v. Van Krieken*, 39 F.3d 227, 229 (9th Cir. 1994); *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir. 1999); *United States v. Keen*, 96 F.3d 425, 427-28 (9th Cir. 1996); *United States v. Mohawk*, 20 F.3d at 1480, 1484 (9th Cir. 1994).

Mr. Tocktoo agrees that Judge Esch initially discussed the first two points at the June 4 hearing. However the court never completely discussed the dangers and disadvantages prong. As noted by the Ninth Circuit, it is up to the court to advise the defendant of the perils of self-representation:

> Our requirements for reviewing the validity of a *Faretta* waiver are predicated on the fact that we do not expect pro se defendants to know the perils of self-representation, and consequently, we cannot expect defendants to recognize that they have not been correctly and fully advised, let alone to point out the court's errors. Accordingly, plain error review would be inappropriate, and we *1167 instead perform the simple *de novo* review in which we have customarily engaged. *See*, e.g., *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (*en banc*); *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990); *Harding v. Lewis*,

>   834 F.2d 853, 857 (9th Cir. 1987); *see also United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987) (*en banc*); *United States v. Harris*, 683 F.2d 322 (9th Cir. 1982); *United States v. Kimmel*, 672 F.2d 720 (9th Cir. 1982); *United States v. Bird*, 621 F.2d 989 (9th Cir. 1980); *United States v. Aponte*, 591 F.2d 1247 (9th Cir. 1978).

*United States v. Erskine*, 355 F3d 1161, 1166-67 (9th Cir. 2004).

The failure to properly advise a defendant of the dangers of self-representation has been a common basis for reversal of convictions. In a year 2000 decision, the Ninth Circuit reported that there had been at least 15 published decisions in which the trial court had failed to properly advise a defendant of the dangers and disadvantages of self representation. *United States v. Hayes*, 231 F.3d 1132, 1138, n.3 (9th Cir. 2000).[2]

In *United States v. Mohawk*, the Ninth Circuit specified that for an attorney waiver to stand, there must be "proof" that the defendant understood the "core functions" of a lawyer in a trial. *United States v. Mohawk*, 20 F.3d 1480, 1484 (9th Cir. 1994). The Ninth Circuit has explained that "the necessary explanation need not be

---

[2] FN3. In at least 15 published opinions since 1978, this court has held that the district court failed to properly warn a defendant of the dangers and disadvantages of self-representation. See, *e.g., Bribiesca v. Galaza*, 215 F.3d 1015 (9th Cir. 2000); *United States v. Hernandez*, 203 F.3d 614 (9th Cir. 2000); *United States v. Keen*, 96 F.3d 425 (9th Cir. 1996); *Snook v. Wood*, 89 F.3d 605 (9th Cir. 1996); *United States v. Mohawk*, 20 F.3d 1480 (9th Cir. 1994); *Hendricks v. Zenon*, 993 F.2d 664 (9th Cir. 1993); *United States v. Fuller*, 941 F.2d 993 (9th Cir. 1991); *United States v. Wadsworth*, 830 F.2d 1500 (9th Cir. 1987); *United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987); *United States v. Rylander*, 714 F.2d 996 (9th Cir. 1983); *United States v. Harris*, 683 F.2d 322 (9th Cir. 1982); *United States v. Kimmel*, 672 F.2d 720 (9th Cir. 1982); *United States v. Bird*, 621 F.2d 989 (9th Cir. 1980); *United States v. Aponte*, 591 F.2d 1247 (9th Cir. 1978); *United States v. Gillings*, 568 F.2d 1307 (9th Cir. 1978). In addition, several unpublished Memorandum Dispositions reversed district court judgments on this specific ground.

lengthy or pedantic." *United States v. Hayes*, 231 F.3d 1132, 1138 (9th Cir. 2000). Even so, in demonstrating an example of an adequate warning, the Ninth Circuit has made clear that a court should explain to the defendant the kinds of "core functions" performed by a lawyer, the kinds of events that require training.

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as *1139 lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. *Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.*

*United States v. Hayes,* 231 F.3d 1138-39 (emphasis added).

In this sample, the trial court alerted the defendant of "the complexities of jury selection," and the need for a defendant to be prepared to do a "permissible opening statement," "direct and cross-examination of witnesses," "motions," and an "appropriate closing argument." *Id.*

By contrast, Judge Esch's inquiry of Mr. Tocktoo on June 4 reveals no attempt to explain to Mr. Tocktoo the task in front of him in conducting his own trial. (Exhibit I) Although the court certainly warned Mr. Tocktoo that the prosecutor, trained in the law, was better equipped to do a trial, the court totally failed to explain to the defendant the core functions that would be performed by an attorney to help him. Telling Mr. Tocktoo that he was disadvantaged to defend himself meant nothing since

17

Mr. Tocktoo was unadvised as to the nature of the task before him. Thus, it cannot be said that Mr. Tocktoo waived his right to counsel "with his eyes open."

Mr. Tocktoo's situation is similar in some ways to that of the defendant in *Jackson v. Yist*, 921 F.2d 882 (9th Cir. 1990). There, the court found that "Jackson's request for self-representation was an impulsive response to the trial court's denial of his request for substitute counsel" and not an unequivocal request to waive counsel." *Id.* at 888. Similarly, Mr. Tocktoo's request was made, for the first time, ten days before trial, in response to his discovery that his new counsel was going to seek to continue the trial yet again. It is apparent, in fact, that the idea of waiving counsel was in fact suggested to Mr. Tocktoo by Mr. Lewis, in response to his adamant desire to have the trial proceed as scheduled.

5. *The denial of Mr. Tocktoo's constitutional right to counsel Is per se prejudicial error*

Mr. Tocktoo's equivocation, combined with the failure to meet the requirements for a valid *Faretta* waiver, constitute *per se* prejudicial error. *United States v. Erskine*, 355 F3d 1161, 1167 (9th Cir. 2004). Where there has been a constitutional deprivation at trial, therefore, prejudice is presumed.

"Harmless error analysis is inapplicable to the unconstitutional denial of the right to counsel." *United States v. Mohawk*, 20 F.3d 1480, 1485 n.4 (9th Cir. 1990), citing *United States v. Balough*, 820 F.2d 1485, 1490 (9th Cir. 1987) (relying on *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). "The improper denial of this right [to self-representation] is '*per se* prejudicial error' and thus requires automatic reversal of a

criminal conviction." *United States v. Arlt*, 41 F.3d 516, 524 (9th Cir. 1994) (citations omitted). "As the denial of the right to self-representation is now amenable to harmless error analysis, Adams' conviction must be reversed." *Adams v. Carroll*, 876 F.2d 1441, 1445 (9th Cir. 1989). Since Mr. Tocktoo was denied his Sixth Amendment right to counsel at trial, prejudice is presumed, and he does not have to demonstrate that the trial would have had a different outcome if he had been represented by an attorney.

      6.    *Prayer for relief*

The record below fails to show a knowing, intelligent, voluntary and unequivocal waiver of his Sixth Amendment right to counsel. This court should strike the conviction and remand the case to the State of Alaska for further proceedings.

DATED this 23rd day of October, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on October 23, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Tamara E. DeLucia, Esq.

/s/ Michael D. Dieni