IN THE SUPERIOR COURT FOR STATE OF ALASKA
SECOND JUDICIAL DISTRICT AT NOME

Edward Tocktoo )
  Defendant )
  )
vs. )
  )
State of Alaska )
  )
  Plaintiff )
  )
  )
  )
Case No. 2NO-S98-038 Cr. )

State of Alaska, Second District

JUL 1 5 1998

By _____ Dep.

## Rebuttal To States Oppostion For New Trial

Comes now I Edward Tocktoo, rebuts the State's opposition for a new trial and readdresses the grounds initially raised and presents new grounds in rebuttal.

   1. I am not and never was qualified or competent to represent myself coherently. The State maintains that I have the right to represent myself, if I chose to do so. Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2525, 45 L.Ed. 2d 562 (19750. The reading in this case is too broad and stand for the proposition that the trial court can only permit self-presentation if it finds that the defendant, (1) having the competency to knowingly, intelligently, and voluntarily waive counsel, (2) does waive assistance of counsel, and (3) is at least minimally capable of presenting a coherent case to jury. The cases are clear that the defendant's ignorance of law, standing alone, will not preclude self-representation. Where the defendent lacks the capacity, however, to make a coherent presentation, the trial court can require that the defendant be represented by counsel. When trial judge finds that a defendant is competent to stand trial (and therefore competent to waive constitutional rights) and in addition finds that the defendanct voluntarily, knowingly, and intelligently waives his right to counsel and elects to proceed pro se, the judge must still consider the defendants ability to make a coherent and intelligible presentation of his defense to the court or a jury. If a competant defendant makes a valid waiver of his right to counsel, the trial court should give the defendant the benefit of the doubt regarding the defendant's ability to make a coherent presentation. If the court is convinced, however, that the defendant cannot represent himself coherently, then counsel must be appointed regardless of the defendant's objections. See ANNAS, 726 P2d at 557. In such a case, counsel must be appointed to represent the defendant. Appointment of advisory counsel is insufficient. Burks v. State, 748 P2d 1181 (Alaska 1988).

   2. As to the effectiveness of counsel (myself). TEST IN DETERMINING EFFECTIVE ASSISTANCE OF COUNSEL. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest. Risher v. State, 523 P2d 421 (Alaska 1974); Winkler v. State, 580 P2d 1167 (Alaska 1978); Coleman v. State, 621 P2d 869 (Alaska 1980). The following test has been

suggested to determine whether an accused has been accorded effective assistance of counsel: Whether counsel exhibited the normal and customary degree of skill possessed by attorneys who are fairly skilled in the criminal law and who have a fair amount of experience at the criminal bar. McCracken v. State, 521 P2d 499 (Alaska 1974). In Risher v. State, 523 P2d 421 (Alaska 1974), the supreme court abandoned the "mockery and farce" test. In its place, it substituted a two-prong test of ineffective assistance: (1) Whether counsel's performance, either generally or in some specific instance fell below what would be expected of layer with ordinary training and sill in criminal law, and (2) Whether this ineffective performance must in some way have contributed to the conviction. I argue that the trial court knew that I was incompetent to represent myself, when I requested a Pro Bono attorney or someone to help explain what the judge meant with those Latin words and college words. The judge then exclaimed, "See, thats why you need an attorney!" The trial court denied my request.

3. Kristen Bey, who was my attorney at time did not or was not getting the evidence that would be used during my trial. And did not want to bring all my witnesses to be present in court. Also I had filled out 12 subpoened forms and the State only subpoenaed 3 of my witness.

4. Judge Esch, was biased against me and rest of my family members, such as a son, grandson, and nephews of our late uncle who's name was Kenneth Kakoona, and denied us go to his funeral. Especailly one of his son who is in Seward, that son of his is named James Kakoona.
Judge Esch also denied all of my witness to be subpoenaed, ignoring the evidence that I was mentioning during some of my court dates. And he said that he will send a fax of statement to A.M.C.C., requesting for me to utilize the phone to contact my witnesses for some imformation, this was on June 16th, and after I return from the court, I kept asking the staff here in A.M.C.C. if the Judge Esch send out a fax for me to utilize the phone at any time to contact my witnesses, and their replies was no, they have'nt got any fax, and soon as it comes in they will let me know. And at one point during one of my court hearings, he threaten me that he can give me 10yrs and after I done that 10yrs he can give me another 10yrs if I was to be found guilty on these four charges, and that WAS when I was still going in hearing. He would denied all of the motions I made, and not denied any of the D.A. Mr. Vacek's motions. And when I tried explaining to him that I did not give any consent to Kristen Bey, to make any motions, he said it was not up to me and she did not have to get my permission.

5. Mr. Vacek failed to give me the witness list that he want to make right after I ask for it. And failed to give me the States full discovery of evidences and witness list. I did not know any about the witness he brought in the trial, they all suprise to me. The testimony K.M. and B.E.B. gave to trooper J.J. is that they both didn't know the exact date of the crimes, also don't know if I whether I was to drunk or to high. If trooper J.J. interviewed the juveniles at the same time, they both would give him the same dates that I was either I was drunk or to high, and they both give him different dates. The court agreed to use some of my prior records in the trial, and Mr. Vacek mention all my priors in the News paper, which was in the July, 2nd Nome Nugget paper. And N.B., a reporter from the Bering Strait Record told me that she was on the grand jury in my case, and said to me that she was bias against me and found me guilty.

6. Robert Kauer, who was not on the MASTER jury list, but was just in the write in list where all the jurours sign in, and his name was not type in like the rest of the jurours, only write in with a regular ink pen. And I did not heard him stated that he was retired or the former cheif of police, and if he did I would have gotten him off on the first pick. Mr. Kauer at one time while I was speaking with my witnesses in a different room, he knock on the door and ask if any of my witnesses had a light, a smoker should have his own lighter.



000190

7. My first court appointed attorney Kristen Bey, during our client/ lawery relationship all she was just trying to get me to admit to the four charges, and she was saying that she can not take my case to trial because she did not spend enough time studying my case since I was incarcerated in Jan.24th. And she did made the motions without my permission, the only time I knew about those motions was after she mention them in one of my court date. The only reason I know why she made out the motions is to stop my 120 days for speedy trial Rule 45. Also she told me that my 120 days for speedy trial stop on April 11th, then the court tells me that my 120 days for speedy trial stop on the 22nd of April. And she was not getting any evidence that can be useful in my trial. I would like to keep her as my attorney but she had no intention of going to trial, at one point she came to me with a deal from the District Attorney, for 6yrs presumptive, and since I did not agree with her she stated that, she can try and see if she can drop it to a misdemeanor and go for 1yr. Also saying to me that she was not going to send all of my witnesses for my trial. Reason I got her off my case was many good reasons, (1) trying to let admit to the four charges, (2) telling me she can't take my case to trial, because she didn't spend time on my case, (3) violated my Right to Speedy Trial Rule 45, (4) she made the motions without permission, (5) was not getting any missing evidences, (6) did not want to subpoena all of my witness, (7) trying to set a deal for 6yrs, (8) acting friendly with the District Attorney at all time handling not only my case, (9) aware of the statements on the juveniles was not making any real "intent of crimes".

As for Bob Lewis, I did not fired him! He made a motion to withdraw from my case because I did not agree with him to extend my trial date to July. Also the court should have retained local counsel who are affiliated with the Public Advocate Office here in Nome. Bob Lewis, said to me that my 120 days for speedy trial and Rule 45, was "meaningless to me." I had every Right to Counsel, but the court left me no choice to represent myself, (1) gave me a lawyer that did not want to go to trial, (2) appointed me a lawyer that had another trial just couple days before my trial, (3) Judge Esch telling me that he is not going to keep on appointting me lawyers, he also was asking the questions to self-represent myself in a fast term so I gave him some answer to the questions I didn't understand.

Conclusion

The only advise my court appointed attorneys was that they didn't want to take my case to trial. See in this case Mr. Vacek gets what he wants even by using my prior records, like the one back in 94, which started with a Report of Harm, stating that I force in the house and rape on 17yr old gril for two nights, which I have evidence that was not true.

I certify that on __7-16-98__
a copy of the foregoing was mailed/given to:
__DA__

Clerk __TBuie__

Exhibit N
Page 3 of 3

Dated this 12th day of July, 1998 at Nome Alaska.

Edawrd Tocktoo
*Edward Tocktoo* 7-12-98

U00191